**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**KANSAS CITY DIVISION**

| | | |
|---|---|---|
| **POWER SOAK SYSTEMS, INC.,**<br>**a Kansas corporation,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EMCO HOLDINGS, INC.,**<br>**a Delaware corporation,**<br><br>**SERVE: The Prentice Hall Corporation System, Inc.**<br>**2711 Centerville Road,**<br>**Suite 400**<br>**Wilmington, DE 19808,**<br><br>**Defendant** | ) | **Case No. ____________________** |

## COMPLAINT

COMES NOW the Plaintiff, by and through its attorneys, and for its cause of action against the Defendant, states and alleges as follows:

**Type of Action**:

1. This is an action brought by the Plaintiff seeking damages for breach of contract and fraudulent misrepresentation arising out of the sale of capital stock of a business located in Grandview, Missouri, in 2003. More particularly, Defendant misrepresented and/or failed to disclose the existence of a multi-employer pension plan with the sheet metal workers' union, causing damage to Plaintiff.

**Jurisdiction and Venue**:

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship of the corporate parties and the amount in controversy exceeds

the sum of $1.7 million, exclusive of interest and cost. Venue is proper in this Court pursuant to 28 U.S.C. § 1331 because a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is or was situated in this judicial district.

**Parties**:

3. Plaintiff is a Kansas corporation with its principal place of business currently located in Grandview, Missouri.

4. Defendant is a Delaware corporation with its principal place of business located outside the State of Missouri.

**General Allegations**:

5. Plaintiff (as the "Buyer"), John Cantrell (a resident of Johnson County, Kansas, and a principal of Plaintiff), Defendant (as the "Seller"), and Metcraft, Inc. (a Missouri corporation, as the "Company" – hereinafter "Metcraft"), entered into a written Stock Purchase Agreement dated September 25, 2003, and which was amended on October 7, 2003 (the "Stock Purchase Agreement"), a full and complete copy of which is attached hereto as **Exhibit A** and made a part hereof by reference as though fully set forth.

6. At the time the parties entered into the Stock Purchase Agreement, the Defendant owned all of the issued and outstanding stock of Metcraft which the Plaintiff desired to acquire from Defendant. Thus, the essence of the Stock Purchase Agreement was to provide for the acquisition of Metcraft by Plaintiff from Defendant. Metcraft is and was engaged in the business of manufacturing and selling continuous-motion Power Soak commercial pot-and-pan washing systems. Until the end of 2005, Metcraft's plant was located at 13910 Kessler Drive in Grandview, Missouri.

7. The sale transaction was closed in Kansas City, Missouri, on October 9, 2003.

8. At all times pertinent hereto leading up to the closing of the sale transaction involving Metcraft, Metcraft had an existing labor agreement with the Sheet Metal Workers International Association Local No. 2 (the "Union").

9. For some time prior to September 2003, as a result of its dealings with the Union, Metcraft was a contributor to a multi-employer pension plan with the Sheet Metal Workers' National Pension Fund (the "Fund"), in accordance with the Multiemployer Pension Plan Amendments Act of 1980 (the "Act").

10. The Act imposes special obligations on employers (and members of an employer's control group) which contribute to multi-employer pension plans, which are not imposed on non-multi-employer plans. Under the Act, an employer in a multi-employer plan is contingently liable for a portion of any difference between the current assets of the plan and the projected benefits to be paid by the plan. This "unfunded liability" becomes payable to the plan when the number of employees for which contributions are made by an employer either declines significantly (a "partial withdrawal") or declines to zero (a "complete withdrawal"). Withdrawal liability generally arises when employers shut down plants, lay off workers, terminate union contracts or go out of business.

11. Plaintiff and Cantrell were not aware that Metcraft was a contributor to a multi-employer plan or that Metcraft had contingent liabilities to the Fund for unfunded withdrawal liability.

12. In Section 6.24 of the Stock Purchase Agreement, Defendant promised and represented in pertinent part as follows:

> 6.24 **Employer Benefit Plans. Except as set forth in Section 6.24.1 of the Disclosure Schedule**, the Company has not established nor maintained, is not obligated to make contributions to or under or otherwise participate in, nor has any liability or obligations with respect to (i) . . . (ii) **any pension, profit-sharing, retirement or other plan, program or arrangement**, or (iii) any other employee benefit plan, fund or program . . . **The Company has not previously made, nor is it currently making, nor is it obligated in any way to make, any contributions to, nor has any liability or obligations with respect to, any multi-employer plan**


Case 4:06-cv-00314-NKL Document 1 Filed 04/12/06 Page 3 of 10

**within the meaning of Section 3(37) or Section 4001(a)(3) of ERISA or any pension plan which is subject to Section 412 of the Code or Title IV of ERISA**. (emphasis added)

13. Defendant did not list, describe or otherwise disclose to Plaintiff in Section 6.24.1 of the Disclosure Schedule to the Stock Purchase Agreement, the Fund or Metcraft's attendant obligations, contingent or otherwise, owed thereto. Indeed, the representation in Section 6.24 of the Stock Purchase Agreement is false and inaccurate, and forecloses by its import the possibility that Metcraft and Plaintiff may have contingent liability for unfunded liability to the Fund.

14. In Section 6.11 of the Stock Purchase Agreement, Defendant agreed, promised and represented as follows:

> 6.11 **No Undisclosed Liabilities**. **Except as disclosed in Section 6.11** of the Disclosure Schedule or in the Financial Statements, Company does not, to the knowledge of Seller, have any liabilities or obligations, **whether accrued, absolute, contingent, or otherwise, of a type required to be reflected in the Financial Statements,** except current liabilities incurred in the ordinary course of business since the date of the most recent balance sheet included in the Financial Statements (the "Most Recent Balance Sheet"), none of which is a liability arising from a breach of contract, tort, infringement claim or lawsuit. (emphasis added)

15. Defendant did not disclose to Plaintiff Metcraft's contingent obligations and liabilities to the Fund in Section 6.11 of the Disclosure Schedule or in the Financial Statements or otherwise.

16. The first paragraph of Section 6 of the Stock Purchase Agreement provides in part that "The Seller [Defendant] acknowledges and confirms that Buyer [Plaintiff] is relying on these representations and warranties [the representations in Section 6] in entering into this Agreement." Based on the representations in the Stock Purchase Agreement, Plaintiff acquired all of the stock of Metcraft for the price and upon the terms set forth in the Stock Purchase Agreement.

17. After the Plaintiff acquired the capital stock of Metcraft and assumed control, Metcraft attempted, without success, to renegotiate the existing labor agreement with the Union to obtain economic concessions.

18. During the negotiations with the Union, Metcraft advised the Union that, for economic reasons, it was exploring the possibility of opening a second production facility, which might ultimately necessitate closing its facility in Grandview and moving all of its production to the new facilities. In the course of those discussions, Metcraft was advised by the Union in or about September 2004 that should Metcraft move its facilities and terminate its labor agreement with the Union, Metcraft would incur "withdrawal liability" to the Fund in excess of $1.5 million.

19. The aforesaid notification from the Union in or about September 2004 was the first time that Plaintiff learned that Metcraft had made and was making contributions to a multi-employer plan, and had significant liability and obligations to such multi-employer plan; to-wit: the potential "withdrawal liability" facing Metcraft should Metcraft close its Grandview facilities and terminate its collective bargaining agreement with the Union.

20. By letter dated October 20, 2004, to Mark Whitley, an executive of the Defendant and the Defendant's signatory to the Stock Purchase Agreement, Plaintiff, by and through its counsel, advised Defendant of the Union's notification and the prospect for "withdrawal liability" owing to the Fund in excess of $1.5 million. Plaintiff expressed dismay to Mr. Whitley in light of the express material misrepresentations that had been made to Plaintiff by Defendant via Mr. Whitley, as well as Metcraft, in the Stock Purchase Agreement. Roger Hollyman, Vice President of Metcraft and the Metcraft signatory to the Stock Purchase Agreement, knew or certainly should have known the particulars concerning the Fund. Hollyman, at all times pertinent hereto, was an agent and representative of Defendant as he reported to Defendant, who exercised dominion and control over Metcraft up to and including the closing. As such, the knowledge, acts and omissions of Hollyman are those of the Defendant.

21. Section 9 of the Stock Purchase Agreement provides for the indemnification of Plaintiff by Defendant respecting "any material inaccuracy in or material breach of any

representation or warranty of the Seller in this Agreement, or in any exhibit, schedule or certificate referred to in and delivered pursuant to this Agreement."

22. Metcraft relocated its operations to Oklahoma and in December 2005 closed its facilities in Grandview, Missouri. The collective bargaining agreement between the Union and Metcraft has terminated. Pursuant to the Act, there was a complete withdrawal of Metcraft from the Fund as of December 31, 2005. Such withdrawal prompted or triggered the "withdrawal liability," as now claimed by the Fund.

23. Metcraft had the right to terminate the collective bargaining agreement with the Union and withdraw from the Fund.

24. By letter dated March 8, 2006, to Metcraft from the Fund, a full and complete copy of which is attached hereto as **Exhibit B** and made a part hereof by reference as though fully set forth, the Fund has computed Metcraft's "withdrawal liability to be $1,757,943.86," and made demand therefor.

25. By letter dated March 15, 2006, Plaintiff's counsel provided Defendant's counsel with a copy of the Fund's March 8, 2006 letter.

26. Pursuant to and in accordance with Section 9 of the Stock Purchase Agreement, Plaintiff has requested and sought full and complete indemnification respecting the Fund's "withdrawal liability" from Defendant.

27. Defendant has refused to indemnify Plaintiff respecting the "withdrawal liability" claimed by the Fund from Metcraft.

28. The "withdrawal liability" imposed by the Fund upon Metcraft, the potential for same being undisclosed in the sale transaction, means that the Plaintiff paid too much for the stock of Metcraft and has been damaged. On knowledge and belief, the aforesaid misrepresentations and nondisclosure were deliberate.

29. Plaintiff incorporates each and every allegation contained in ¶¶ 1 through 28 in each Count hereinafter set forth below.

**Liability and Damages**:

**COUNT I –**
**Breach of Contract**

For its first cause of action against Defendant, Plaintiff further states and alleges as follows:

30. Plaintiff substantially performed its agreement with Defendant.

31. Defendant breached the Stock Purchase Agreement and failed to perform its agreement thereunder in each of the following respects:

(a) by failing to disclose the existence of the Fund and any attendant obligations thereto;

(b) by promising and representing to Plaintiff that Metcraft had not previously made, nor was it currently making, nor was it obligated in any way to make, any contributions to a multi-employer pension plan, nor did Metcraft have any liability or any obligations in respect to any multi-employer pension plan, including the Fund, which promises and representations were false; and

(c) by failing or refusing to indemnify Plaintiff in accord with Section 9 of the Stock Purchase Agreement, demand having been made.

32. As a direct and proximate result of the aforesaid breaches, and the failure and/or refusal of Defendant to perform its obligations and agreements under the Stock Purchase Agreement, Plaintiff has been damaged.

33. Plaintiff's damages exceed $1.7 million.

34. Defendant's aforesaid breach of the Stock Purchase Agreement, under the circumstances as described, was intentional and willful, and one calculated to damage the Plaintiff.

As such, Defendant's conduct rose to the level of an independent, intentional tort. Defendant's conduct is and was outrageous, and or clearly demonstrates an evil motive or reckless indifference to the rights of Plaintiff.

**COUNT II –**
**Fraudulent Misrepresentation**

For its second cause of action against Defendant, Plaintiff further states and alleges as follows:

35. Defendant represented to Plaintiff that Metcraft had not previously made, nor was it currently making, nor was it obligated in any way to make, any contributions to a multi-employer pension plan, nor did Metcraft have any liability or obligations with respect to any multi-employer pension plan, including the Fund. Additionally, Defendant represented to Plaintiff, by and through its listing of liabilities which made no reference to the Fund, that it had no liability, contingent or otherwise, to the Fund.

36. Defendant's representations to the Plaintiff were false.

37. Defendant knew, or should have known, that the representations were false at the time they were made.

38. The representations were material to the purchase by Plaintiff of the issued and outstanding stock of Metcraft.

39. Plaintiff relied on the representations in making the purchase of the capital stock of Metcraft, and in so relying, the Plaintiff was using ordinary care.

40. As a direct and proximate result of such representations by the Defendant to the Plaintiff, the Plaintiff has been damaged.

41. Plaintiff's damages exceed $1.7 million.

42. The above-described conduct of Defendant is and was outrageous because of Defendant's evil motive or reckless indifference to the rights of Plaintiff. Defendant knew, or

certainly should have known, that by making these representations to the Plaintiff, that Metcraft, as owned by Plaintiff, was exposed and vulnerable to the Fund in the event Metcraft ever determined to terminate its dealings with the Union, and relocate the plant, which Metcraft had a right to do.

**Request for Relief**:

WHEREFORE, the Plaintiff prays judgment against the Defendant as follows:

(a) For its actual damages, including interest from the time that monies lawfully owed should have been tendered to the Plaintiff;

(b) For exemplary damages in an amount sufficient to punish Defendant for its outrageous conduct and to deter others from similar conduct;

(c) For attorneys' fees and recovery of all attendant expenses as may be provided for under the indemnification provisions [Section 9] of the Stock Purchase Agreement;

(d) For Plaintiff's costs herein expended; and

(e) For such other and further relief as the Court shall deem just and proper.

**Plaintiff demands trial by jury.**

SHUGHART THOMSON & KILROY, P.C.

R. Dan Boulware – MO #24289
dboulware@stklaw.com
Todd H. Bartels - #45677
tbartels@stklaw.com
3101 Frederick Avenue
St. Joseph, MO 64506
Telephone: (816) 364-2117
Facsimile: (816) 279-3977

Dennis D. Palmer – MO #21499
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 West 12th Street, Suite 1700
Kansas City, MO 64105
Telephone: (816) 421-3355
Facsimile: (816) 374-0509

ATTORNEYS FOR PLAINTIFF