IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| POWER SOAK SYSTEMS, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-0314-CV-W-NKL |
| | ) | |
| EMCO HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

ORDER

Pending before the Court is Defendant EMCO Holdings, Inc.'s ("EMCO") Motion to Dismiss [Doc. # 12]. For the reasons set forth below, the Motion is Denied.

**I.  Background**

The Court accepts the following facts, pleaded in Plaintiff Power Soak Systems, Inc.'s ("Power Soak") Complaint, as true for the purposes of EMCO's Motion to Dismiss. On September 25, 2003, Power Soak entered into a Stock Purchase Agreement with EMCO to buy all shares issued and outstanding in Metcraft, Inc., a company manufacturing and selling Power Soak commercial pot-and-pan washing systems. At the time, Metcraft's plant was located in Missouri, and it had an existing labor agreement with the Sheet Metal Workers International Association Local No. 2. Per that labor agreement, Metcraft was a contributor to a multi-employer pension plan with the Sheet

1

Metal Workers National Pension Fund. Under federal law, a company withdrawing from such a pension fund in whole or in part incurs a substantial withdrawal liability.

EMCO did not disclose Metcraft's contributions or future obligations to the Pension Fund before the Stock Purchase Agreement closed on October 9, 2003. On the contrary, in Section 6.34 of the Stock Purchase Agreement, EMCO represented to Power Soak that Metcraft was not contributing to, nor had any outstanding obligations to, any pension funds. EMCO further represented in Section 6.11 that Metcraft had no undisclosed liabilities. Finally, in Section 9.1, EMCO promised to defend and indemnify Power Soak from and against any losses, claims or liabilities incurred as a result of any material inaccuracy in, or a material breach of, any representation or warranty.

A year after the closing, Power Soak attempted unsuccessfully to renegotiate Metcraft's labor agreement with the Union. During the negotiations, Power Soak suggested that it might move the Metcraft plant to Oklahoma. The Union responded that if it did so and the Labor agreement was terminated, then Metcraft would incur withdrawal liability in excess of $1.5 million for withdrawing from the Pension Fund. This was the first time Power Soak learned of the Pension Fund contributions or its potential liability for withdrawing. Power Soak notified EMCO shortly thereafter of this potential liability and expressed its dismay at EMCO's failure to disclose the information.

In December 2005, Metcraft relocated to Oklahoma, withdrawing from the labor agreement and the Pension Fund. In March 2006, the Pension Fund sent a demand letter to Metcraft for the withdrawal liability in the amount of $1,757,943.86. Power Soak

2

Case 4:06-cv-00314-NKL   Document 40   Filed 08/25/06   Page 2 of 6

forwarded the Fund's letter to EMCO a week later and demanded that EMCO defend and indemnify Power Soak against the withdrawal liability. When EMCO refused to do so, Power Soak sued, alleging two counts for Breach of Contract and Fraudulent Misrepresentation.

**II.     Discussion**

EMCO has moved to dismiss on the grounds that Power Soak's claims are not yet ripe. Because the Pension Fund has not yet sued Metcraft, let alone obtained a judgment against it, EMCO argues that neither Power Soak nor Metcraft have sustained any damages. And since Power Soak seeks only damages and not declaratory relief, EMCO argues that there is no ripe controversy to sustain this Court's jurisdiction.

EMCO reads Power Soak's Complaint too narrowly. Count I alleges that EMCO breached its contract (a) by failing to disclose the existence of the Pension Fund; (b) by misrepresenting that Metcraft had no obligation, past, present or future, to any employee benefit funds; and (c) by refusing to defend and indemnify Power Soak with regard to the Pension Fund's demand letter for Metcraft's withdrawal liability. Assuming, as the Court must in deciding a motion to dismiss, that Power Soak will be able to show that EMCO's failure to disclose the existence of the Pension Fund was a material breach of the contract, Count I is ripe even if the Pension Fund has not yet sued on the Withdrawal Liability. *See Gee v. Payne* 939 S.W.2d 383, *387 (Mo. Ct. App. 1997) ("In contract cases, proof of the contract and its breach gives rise to nominal damages and, thus, a submissible case is made regardless of the failure to prove actual damages.")

3

Further, Power Soak alleges that it has already sustained damage in the diminished value of Metcraft caused by EMCO's misrepresentation of and failure to disclose the Pension Fund obligation. Power Soak purchased Metcraft's stock at a price reflecting a belief that Metcraft had no current or future obligations to an employee benefit fund. If Power Soak had known of the obligation, it might not have gone through with the purchase, or it might have paid less for the stock. At this point in the litigation, the Court cannot say that Power Soak can prove no set of facts entitling it to relief for the diminished value of its property even absent a judgment against Metcraft by the Pension Fund. The potential of such a judgment is a cloud on Metcraft's title, and Power Soak may be able to convince a jury that this cloud impaired the value of its property.

As for Power Soak's third theory of contract breach under Count I, failure to defend and/or indemnify, Power Soak has at the very least alleged anticipatory breach. "Missouri law recognizes the doctrine of anticipatory breach by repudiation and a party to a contract repudiates that contract by manifesting, by words or conduct a positive intention not to perform." *Jetz Serv. Co. v. Botros*, 91 S.W.3d 157, 163 (Mo. Ct. App. 2002). Power Soak tendered the demand letter from the Pension Fund to EMCO's for defense but EMCO refused to defend the claim if and when it was pursued in court. Thus, Power Soak need not wait for the Fund to actually sue to know that EMCO has breached its contractual promise to defend. "The duty to defend arises whenever there is a potential or possible liability to pay based on facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial."

4

*McCormack Baron Mgmt. Servs., Inc. v Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999)(internal citation omitted). A party has the duty to defend claims falling within the scope of an agreement even though ultimately it may not be obligated to indemnify an indemnitee. *Superior Equip. Co., Inc. v. Maryland Cas. Co.*, 986 S.W.2d 477, 484-85 (Mo. Ct. App. 1998). The duty to defend is breached when the indemnitor rejects an indemnitee's tender of defense. *See Travelers Indem. Co. v. S. M. Wilson & Co.*, 2005 WL 3143779, at *3 (E.D. Mo. Nov. 23, 2005) (holding that duty to defend was breached when defendant rejected plaintiff's tender of its defense).

The only aspect of Count I which may arguably be unripe is the indemnification theory. *See Shapiro Sales Co. v. Alcoa Inc.*, 2006 U.S. Dist. LEXIS 54047 (E.D. Mo. 2006) (finding breach of duty to indemnify not yet ripe even thought breach of duty to defend was); *Superior Equip. Co.*, 986 S.W.2d at 484 ("[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts."). As with the duty to defend, EMCO has stated its intention to breach its duty to indemnify if and when that duty arises, thus it has anticipatorily repudiated that provision of the contract as well. Ascertaining the damages for anticipatory repudiation of an indemnity contract may prove difficult for Power Soak, but that issue is more properly considered in a Motion for Summary Judgment than a Motion to Dismiss. But even if that one theory of contract liability is not ripe, Power Soak has put forth several other theories which are. Count I will not be dismissed.

5

Count II of Power Soak's Complaint, Fraudulent Misrepresentation, is also ripe for the same reasons the Breach of Contract claim is ripe. The Court cannot sat at this juncture in the litigation that no set of facts would entitle Power Soak to relief.

## III. Conclusion

Accordingly, it is

ORDERED that EMCO's Motion to Dismiss [Doc. # 12] is DENIED.

s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: August 25, 2006
Jefferson City, Missouri

6

Case 4:06-cv-00314-NKL   Document 40   Filed 08/25/06   Page 6 of 6